**ATTACHMENT CV-5012**

# CIVIL LAWSUIT NOTICE

*Superior Court of California, County of Santa Clara*
*191 N. First St., San Jose, CA 95113*

CASE NUMBER: 1 1 0 C V 1 8 1 0 9 7

---

## PLEASE READ THIS ENTIRE FORM

---

*PLAINTIFF* (the person suing):  Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint, Summons,* an *Alternative Dispute Resolution (ADR) Information Sheet,* and a copy of this *Civil Lawsuit Notice,* and you must file written proof of such service.

> *DEFENDANT* (The person sued):  **You must do each of the following to protect your rights:**
>
> 1. You must file a **written response** to the *Complaint, using the proper legal form or format,* in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint;*
> 2. You must serve by mail  a copy of your written response on the  Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
> 3. You must attend the first Case Management Conference.
>
> **Warning:  If you, as the Defendant, do not follow these instructions,**
> **you may automatically lose this case.**

*RULES AND FORMS:*  You must follow the California Rules of Court and the Superior Court of California, County of Santa Clara Local Civil Rules and use proper forms.  You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), www.scselfservice.org (Select "Civil") or from:

- State Rules and Judicial Council Forms:  www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms:  http://www.sccsuperiorcourt.org/civil/rule1toc.htm

*CASE MANAGEMENT CONFERENCE (CMC):*  You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC.  You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

> *You or your attorney must appear at the CMC.  You may ask to appear by telephone – see Local Civil Rule 8.*

> *Your Case Management Judge is:*  **Honorable Kevin McKenney**            *Department:*   **21**
>
> *The 1st CMC is scheduled for:*  (Completed by Clerk of Court)
>
>             Date:   **JAN 1 8 2011**        Time: **2:15 pm**  in Department:   **21**
>
> *The next CMC is scheduled for:*  (Completed by party if the 1st CMC was continued or has passed)
>
>             Date: _____  *Time:* _____  in Department: _____

*ALTERNATIVE DISPUTE RESOLUTION (ADR):*  If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*

ADR can have a number of advantages over litigation:

< ADR can save time. A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

< ADR can save money. Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

< ADR provides more participation. Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

< ADR provides more control and flexibility. Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

< ADR can reduce stress. ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*

< Mediation is an informal, confidential, flexible and non-binding process in the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

< Mediation may be appropriate when:
> < The parties want a non-adversary procedure
> < The parties have a continuing business or personal relationship
> < Communication problems are interfering with a resolution
> < There is an emotional element involved
> < The parties are interested in an injunction, consent decree, or other form of equitable relief

< Neutral evaluation, sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
> < The parties are far apart in their view of the law or value of the case
> < The case involves a technical issue in which the evaluator has expertise
> < Case planning assistance would be helpful and would save legal fees and costs
> < The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

< Arbitration is a less formal process than a trial, with no jury. The arbitrator hears the evidence and arguments of the parties, then makes a written decision. The parties can agree to binding or non-binding arbitration. In binding arbitration, the arbitrator's decision is final and completely resolves the case, without the opportunity for appeal. In non-binding arbitration, the arbitrator's decision could resolve the case, without the opportunity for appeal, unless a party timely rejects the arbitrator's decision within 30 days and requests a trial. Private arbitrators are allowed to charge for their time.

Arbitration may be appropriate when:
   < The action is for personal injury, property damage, or breach of contract
   < Only monetary damages are sought
   < Witness testimony, under oath, needs to be evaluated
   < An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

< **Civil Judge ADR** allows parties to have a mediation or settlement conference with an experienced judge of the Superior Court. Mediation is an informal, confidential, flexible and non-binding process in which the judge helps the parties to understand the interests of everyone involved, and their practical and legal choices. A settlement conference is an informal process in which the judge meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations. The request for mediation or settlement conference may be made promptly by stipulation (agreement) upon the filing of the Civil complaint and the answer. There is no charge for this service.

Civil Judge ADR may be appropriate when:
   < The parties have complex facts to review
   < The case involves multiple parties and problems
   < The courthouse surroundings would be helpful to the settlement process

< **Special masters and referees** are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.

Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

< **Settlement conferences** are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.

Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*

Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; collections; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; fraud; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; sports; trade secret; and wrongful death, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, information about ADR procedures, or answers to other questions about ADR?*

*Contact:*

Santa Clara County Superior Court
ADR Administrator
408-882-2530

Santa Clara County DRPA Coordinator
408-792-2704

---

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET/ CIVIL DIVISION**

CV-5003 REV 6/08

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| GREGORY D. HULL, SB# 57367<br>WEIL, GOTSHAL & MANGES LLP<br>201 Redwood Shores Parkway<br><br>Redwood Shores, CA 94065 | ENDORSED<br>FILED |

TELEPHONE NO.:                    FAX NO.: Fax No. 650-802-3100

ATTORNEY FOR *(Name)*:  APPLE INC.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 North First St.
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME:

2010 AUG 26  P 3: 29

CASE NAME:  APPLE v. EASTMAN KODAK

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 110CV181091 |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [X] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [X] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [ ] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive

4. Number of causes of action *(specify)*: Five

5. This case [ ] is [x] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: August 26, 2010

GREGORY D. HULL, SB# 57367
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Legal<br>Solutions<br>Plus | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                                   CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
 Auto (22)—Personal Injury/Property
  Damage/Wrongful Death
 Uninsured Motorist (46) *(if the*
  *case involves an uninsured*
  *motorist claim subject to*
  *arbitration, check this item*
  *instead of Auto)*
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
 Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
   Wrongful Death
 Product Liability *(not asbestos or*
  *toxic/environmental)* (24)
 Medical Malpractice (45)
  Medical Malpractice–
   Physicians & Surgeons
  Other Professional Health Care
   Malpractice
 Other PI/PD/WD (23)
  Premises Liability (e.g., slip
   and fall)
  Intentional Bodily Injury/PD/WD
   (e.g., assault, vandalism)
  Intentional Infliction of
   Emotional Distress
  Negligent Infliction of
   Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
 Business Tort/Unfair Business
  Practice (07)
 Civil Rights (e.g., discrimination,
  false arrest) *(not civil*
  *harassment)* (08)
 Defamation (e.g., slander, libel)
  (13)
 Fraud (16)
 Intellectual Property (19)
 Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
   *(not medical or legal)*
 Other Non-PI/PD/WD Tort (35)
**Employment**
 Wrongful Termination (36)
 Other Employment (15)

**Contract**
 Breach of Contract/Warranty (06)
  Breach of Rental/Lease
   Contract *(not unlawful detainer*
   *or wrongful eviction)*
  Contract/Warranty Breach—Seller
   Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
   Warranty
  Other Breach of Contract/Warranty
 Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case—Seller Plaintiff
  Other Promissory Note/Collections
   Case
 Insurance Coverage *(not provisionally*
  *complex)* (18)
  Auto Subrogation
  Other Coverage
 Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
 Eminent Domain/Inverse
  Condemnation (14)
 Wrongful Eviction (33)
 Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent*
   *domain, landlord/tenant, or*
   *foreclosure)*
**Unlawful Detainer**
 Commercial (31)
 Residential (32)
 Drugs (38) *(if the case involves illegal*
  *drugs, check this item; otherwise,*
  *report as Commercial or Residential)*
**Judicial Review**
 Asset Forfeiture (05)
 Petition Re: Arbitration Award (11)
 Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
   Case Matter
  Writ–Other Limited Court Case
   Review
 Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
   Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
 Antitrust/Trade Regulation (03)
 Construction Defect (10)
 Claims Involving Mass Tort (40)
 Securities Litigation (28)
 Environmental/Toxic Tort (30)
 Insurance Coverage Claims
  *(arising from provisionally complex*
  *case type listed above)* (41)
**Enforcement of Judgment**
 Enforcement of Judgment (20)
  Abstract of Judgment (Out of
   County)
  Confession of Judgment *(non-*
   *domestic relations)*
  Sister State Judgment
  Administrative Agency Award
   *(not unpaid taxes)*
  Petition/Certification of Entry of
   Judgment on Unpaid Taxes
  Other Enforcement of Judgment
   Case
**Miscellaneous Civil Complaint**
 RICO (27)
 Other Complaint *(not specified*
  *above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-*
   *harassment)*
  Mechanics Lien
  Other Commercial Complaint
   Case *(non-tort/non-complex)*
  Other Civil Complaint
   *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
 Partnership and Corporate
  Governance (21)
 Other Petition *(not specified*
  *above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
   Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late
   Claim
  Other Civil Petition

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ENDORSED
FILED

2010 AUG 26  P 3: 29

**NOTICE TO DEFENDANT:** EASTMAN KODAK COMPANY
*(AVISO AL DEMANDADO):*

**YOU ARE BEING SUED BY PLAINTIFF:** APPLE INC.
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court<br>191 North First St.<br><br>San Jose, CA 95113 | CASE NUMBER:<br>*(Número Del Caso)*<br>C V 1 8 1 0 9 1 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
GREGORY D. HULL, SB# 57367          Fax No. 650-82-
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065

| DATE:<br>*(Fecha)*  AUG 2 6 2010 | DAVID H. YAMASAKI<br>Clerk, by _____, Deputy<br>*(Secretario)*                           *(Adjunto)* |
|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

| [SEAL] | 1. ☐ as an individual defendant.<br><br>2. ☐ as the person sued under the fictitious name of *(specify):*<br><br>3. ☒ on behalf of *(specify):* EASTMAN KODAK COMPANY<br><br>under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)<br>       ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)<br>       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)<br>       ☐ other *(specify):*<br><br>4. ☐ by personal delivery on *(date):* |
|---|---|

| | | Page 1 of 1 |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS**          Legal<br>                     Solutions<br>                     & Plus | Code of Civil Procedure §§ 412.20, 465 |

1  MATTHEW D. POWERS (Bar No. 104795)
   STEVEN S. CHERENSKY (Bar No. 168275)
2  GREGORY D. HULL (Bar No. 57367)
   WEIL, GOTSHAL & MANGES LLP
3  201 Redwood Shores Parkway
   Redwood Shores, CA 94065
4  Telephone: (650) 802-3000
   Facsimile: (650) 802-3100
5  matthew.powers@weil.com
   steven.cherensky@weil.com
6  greg.hull@weil.com

7

8  Attorneys for Plaintiff
   APPLE INC.
9

10              **SUPERIOR COURT OF CALIFORNIA**

11              **COUNTY OF SANTA CLARA** 110CV181091

12  APPLE INC.,                          | Case No.

13              Plaintiff,               | UNLIMITED CIVIL CASE

14      v.                               | COMPLAINT FOR BREACH OF
                                         | CONTRACT, CONVERSION,
15  EASTMAN KODAK COMPANY                | DECLARATION OF OWNERSHIP,
                                         | UNFAIR COMPETITION, AND BREACH
16              Defendant.               | OF CONFIDENCE

17                                       | **JURY TRIAL DEMANDED**

18                          **COMPLAINT**

19          1.      This is a civil action brought by Plaintiff Apple Inc. ("Apple") to enjoin

20  Kodak from further profiting from Apple's intellectual property and to recover economic damages

21  and intellectual property from Defendant Eastman Kodak Company ("Kodak") as a result of

22  Kodak's breach of contract under Cal. Civ. Code § 3300 et seq.; Kodak's conversion; Kodak's acts

23  of unfair competition under the common law and Cal. Bus. & Prof. Code § 17200 and 17500 et

24  seq.; and Kodak's breach of confidence.

25          2.      As the paragraphs below detail, in the early 1990s Apple developed a digital

26  camera architecture involving an LCD viewfinder for live motion preview of images.   During this

27  period, Apple approached Kodak about potentially working with Apple to commercialize this

28  digital camera architecture.   Apple revealed confidential details of its digital camera development

                    **COMPLAINT FOR BREACH OF CONTRACT**

1   program to Kodak.  In breach of contractual and common law obligations—and unbeknownst to

2   Apple until recently—Kodak wrongfully took this information and claimed it as Kodak's own in

3   applying for and obtaining one or more United States patents.   Kodak subsequently engaged in an

4   aggressive licensing campaign supported by at least one such patent, earning Kodak over $1 billion.

5            3.      In support of its complaint, Apple alleges as follows:

6                                    **PARTIES**

7            4.      Apple is a corporation organized under the laws of California with its

8   principal place of business located at 1 Infinite Loop, Cupertino, California 95014.

9            On information and belief, Kodak is a corporation organized under the laws of New

10  Jersey with its principal place of business located at 343 State Street, Rochester, New York 14650.

11                                   **JURISDICTION**

12           5.      This is an action arising under the laws of the State of California, including

13  Cal. Civ. Code § 3300 *et seq.* and Cal. Bus. & Prof. Code § 17200 and 17500 *et seq.*   The damages

14  sustained by Apple are in excess of the jurisdictional minimum of this Court.

15           6.      Personal jurisdiction exists over Kodak because, as set forth below, Kodak

16  has committed acts in this State that are the subject of Apple's claims herein and has injured Apple.

17  Kodak has specifically availed itself of the laws of California in doing so.

18                                     **VENUE**

19           7.      Venue over Apple's claims is proper in this district pursuant to the

20  California Code of Civil Procedure § 395(a) because Kodak conducts business in Santa Clara

21  County, Apple is located in Santa Clara County, and many of the acts complained of occurred in

22  Santa Clara County.

23           **BACKGROUND FACTS COMMON TO ALL CAUSES OF ACTION**

24  **I.     Introduction**

25           8.      Apple is a leading designer and manufacturer of personal computers,

26  portable digital media players, and mobile communications devices.  Apple's personal digital

27  media and communications products, such as the iPhone, the iPod line of digital media players, and

28  the iPad, are groundbreaking products that revolutionized their respective industries, enjoy

2

**COMPLAINT FOR BREACH OF CONTRACT**

1   enormous commercial success and popular acclaim, and continue to lead their fields in innovation,

2   performance, and ease of use. Apple's product portfolio also includes its industry-leading line of

3   Macintosh desktop and notebook computers, including the iMac and MacBook products such as the

4   MacBook Pro and ultra-light MacBook Air, and its portfolio of software, such as the Mac OS X

5   operating system that comes pre-installed on every Macintosh computer.

6         9.    Apple's history of launching technically innovative and commercially

7   successful products stems from its ongoing commitment to research and development ("R&D").

8   For decades Apple has made substantial investments in R&D in a wide variety of technical fields,

9   including digital camera technology, computer hardware and software, graphical and touch-based

10   user interfaces, digital media players, digital imaging, and personal communications.

11   Substantially all of this R&D has been conducted by employees located at the company

12   headquarters in Cupertino, Santa Clara County, California. The U.S. Patent and Trademark Office

13   has awarded Apple patent protection for many of Apple's innovations, including patents relating to

14   digital cameras, and Apple continues to seek and obtain patent protection for its recent and ongoing

15   innovations.

16         10.    On information and belief, Kodak is a company engaged in the business of

17   selling, inter alia, digital cameras and accessories. Kodak sells many of these products and

18   services in Santa Clara County. But like its other operations, Kodak's sales and profits from the

19   sale of these devices has declined substantially. Kodak has earned an annual profit only once since

20   2004. In 2009, Kodak's net loss amounted to $210 million, and in 2008, its sales shrunk 19%.

21   Kodak hired a new CEO in 2005, who turned to an aggressive patent litigation strategy as a means

22   to generate cash for the company's operations. One patent to which Kodak has turned to make up

23   for its inability to compete in the marketplace is U.S. Patent No. 6,292,218 (the "'218 patent"),

24   which claims a digital camera capable of capturing an image while previewing the scene to be

25   captured on an LCD screen. Within the last two years, Kodak has filed a number of patent

26   infringement actions based in part on the '218 patent, and has claimed to have received over one

27   billion dollars in settlement of those litigations.

28

**COMPLAINT FOR BREACH OF CONTRACT**

11.     In furtherance of its litigation strategy, on January 14, 2010, Kodak requested that the U.S. International Trade Commission ("ITC") institute an investigation to determine whether Apple's iPhone products—which contain a digital camera—violated Section 337 of the Tariff Act of 1930 by reason of Apple's purported infringement of the '218 patent.   That complaint resulted in the institution of Investigation No. 337-TA-703 ("the 703 Investigation"). As part of that complaint, Kodak requested an order that would prohibit importation of all of Apple's current iPhone products into the United States, and enjoin Apple from selling any such products already in the United States.   Kodak also filed a complaint asserting the '218 patent (along with another Kodak patent) in the United States District Court for the Western District of New York (Civil Action No. 6:10-CV-06021)("the '021 case") seeking monetary damages based on Apple's alleged infringement of the '218 patent.   Given the potential economic severity of Kodak's requested relief, in early 2010, Apple launched an extensive internal investigation into Apple's prior relationship with Kodak in the 1990s to determine what Apple disclosed to Kodak concerning the development of digital camera technology.   Apple's investigation, summarized in sections II-IV below, revealed that Apple is the rightful owner of the '218 patent pursuant to disclosures made by Apple to Kodak and contracts made between the parties in the early 1990s.   Indeed, Apple disclosed the architecture for its confidential digital camera technology to Kodak subject to non-disclosure agreements, which also provided that any improvements Kodak made to Apple's disclosures remain the property of Apple.   By using Apple's disclosures to draft and prosecute the '218 patent and claim ownership thereof, Kodak is in breach of its agreements with Apple, has unlawfully converted Apple's intellectual property for Kodak's use, and has improperly reaped substantial benefits from such conversion.   Kodak has also breached its duty of confidence owed to Apple and has engaged in unfair competition.

## II.     Apple and the Relevant Technology

12.     By the early 1990s, Apple was already researching a variety of digital camera technologies within its Advanced Technology Group.   In 1992, the typical consumer camera user was a film camera that needed to be held up to the user's face in order to capture an image.   Apple developed prototypes and completed user studies to explore possible digital camera

4

**COMPLAINT FOR BREACH OF CONTRACT**

implementations. This research sparked enough interest within Apple that Apple began investigating whether the research could be developed into a viable product. Apple employee Eric Zarakov and his team eventually developed a set of features and an architecture for a digital camera.

13. The camera architecture was developed around the central concept of a digital still camera with an LCD viewfinder for live color preview, including sound annotations for still images, review and playback of images and sounds, and easy transfer of the images to a computer or other digital device.

14. As early as February 1992, Apple had built a working prototype to demonstrate the experience of using a color display as a live viewfinder and review tool.

15. During Apple's development of the digital camera architecture, Apple sought potential original equipment manufacturer ("OEM") to work with Apple to commercialize and manufacture the camera. Because Apple's core expertise was in computers and digital processing, Apple looked for OEMs with experience producing sensors, lens systems, and displays it could use to implement the architecture Apple had designed. Kodak was one such potential OEM.

### III. The Relationship Between Apple and Kodak

16. Apple formalized an agreement with Kodak in early 1990. Apple and Kodak explored how the two companies could work together on various projects, including the commercialization of Apple's digital cameras. Apple was considering whether Kodak could supply certain components for its digital camera. In 1991 and 1992, representatives from Apple and Kodak met to discuss digital camera technology. Named inventors of the '218 patent, Timothy Tredwell and Kenneth Parulski, each attended at least one such meeting each.

17. One such meeting occurred on November 17 and 18, 1992, in Rochester, New York. Apple and Kodak met to discuss more specifically what Kodak could offer as part of Apple's development of Apple's proposed digital camera architecture. Apple employees Eric Anderson, Eric Zarakov, and Scott Fullam attended that meeting. A named inventor of the '218 patent, Timothy Tredwell, among others, attended the meeting for Kodak. At that meeting, Apple

**COMPLAINT FOR BREACH OF CONTRACT**

1    presented to Kodak the confidential architecture and design of Apple's digital camera, and Kodak

2    presented to Apple information about Kodak's lenses and CCDs.  Members of Apple's digital

3    camera project team met with members of Kodak's imaging department, and Apple disclosed to

4    Kodak's imaging department the architecture for a digital still camera with live color preview.

5    Apple also disclosed the use of a high-powered, multitasking processor.

6              18.    Apple's disclosures to Kodak at the November 17–18, 1992 meeting are

7    confirmed in contemporaneous documents.  For example, Mr. Zarakov of Apple sent a letter to

8    David Lewis of Kodak on January 25, 1993 in order to commemorate the details of Apple's

9    disclosure to Kodak.  Specifically, Mr. Zarakov described that Apple disclosed a digital signal

10   processor as a microprocessor, as well as certain video subsystem architectures.  In a voicemail

11   transcribed at the time it was received, Mr. Lewis of Kodak acknowledged receipt of Mr. Zarakov's

12   letter without disputing Mr. Zarakov's description of what Apple disclosed.

13             19.    Apple made another presentation to Kodak on February 19, 1993, specifying

14   details such as the resolution and color filter pattern of the CCD and the LCD display.  The

15   February 1993 presentation also further memorialized the processing of still images disclosed by

16   Apple to Kodak at the November 17–18, 1992 meeting and as described in a November 24, 1992

17   technical overview presentation.

18             20.    In parallel with the February 19, 1993 presentation, Mr. Fullam drafted

19   several block diagrams showing the components of Apple's camera architecture that supported still

20   image capture and live color viewfinder.  Those block diagrams further evidence the state of the

21   development project at Apple in February 1993.

22             21.    Kodak worked together with Apple to develop the Apple QuickTake 100

23   camera, released in early 1994.  That camera did not include Apple's live color preview

24   architecture, but the digital imaging personnel at Apple continued to develop a digital still camera

25   with live color preview.  The core aspects of the live color preview camera architecture were

26   incorporated into next-generation camera projects.  These camera projects were also proposed by

27   Apple to third parties, including Sanyo, and were ultimately developed by Apple in co-operation

28   with Kodak.

6

**COMPLAINT FOR BREACH OF CONTRACT**

22.     In 1996, Apple's digital camera projects and certain of Apple's digital camera intellectual property and personnel were transferred to a company called FlashPoint. Apple's camera architecture, comprising a digital still camera with live color preview, was incorporated into a number of cameras using Apple's concept that were jointly developed by Kodak and FlashPoint, and sold by Kodak, including the Kodak DC-220, DC-260, DC-265, and DC-290.

23.     During this period of cooperation, unbeknownst to Apple, Kodak was secretly taking Apple's innovations and claiming them as Kodak's own in at least one patent application filed with the U.S. Patent and Trademark Office.  That application, which ultimately issued as the '218 patent, describes and appears to be based upon technology included in the confidential, proprietary disclosures Apple made to Kodak in the 1992-1993 time period.

## IV.     The Agreements Between Apple and Kodak

24.     Both Apple and Kodak understood that the discussions between them included the exchange of confidential information, and that each party would protect and respect the confidential information of the other, neither disclosing it to anyone else nor misusing the information for its own benefit.  Indeed, the disclosures described above that were made by Apple to Kodak were made subject to non-disclosure agreements.  The non-disclosure agreements contain provisions that any patentable improvements made to information disclosed under the non-disclosure agreement belong to the discloser and *not* the party who made the improvement. One such agreement signed by Kodak and Apple was dated December 20, 1994—ten days prior to the filing of the application that led to the '218 Patent.

25.     The 1994 agreement governed the parties' rights, both with regard to past and future work and specifies that any derivative work belongs to the company that made the original disclosure upon which the derivative work was based.

26.     Another agreement is a confidentiality agreement between Apple and Kodak dated February 28, 1991—the same date that Apple and Kodak met to discuss, among other things, low-cost digital cameras.  This agreement likewise has a provision specifying that any derivatives of information disclosed remain the property of the discloser.  The five-year term of this agreement extends beyond the filing date of the application that led to the '218 Patent.  Thus,

7

**COMPLAINT FOR BREACH OF CONTRACT**

1    under the 1991 agreement, Apple owns any patent derived from confidential information provided

2    by Apple.

3        27.    There is no doubt that Apple considered its proprietary digital camera

4    designs to be confidential.   Mr. Zarakov wrote Mr. Lewis to notify him of that fact.   Included with

5    that letter were three figures reflecting various proprietary architectures disclosed to Kodak.

6    There is also no doubt that Kodak had notice of that fact and agreed to it.   As explained above, Mr.

7    Lewis left a voicemail for Mr. Zarakov acknowledging receipt of a letter from Apple informing

8    Kodak that Apple considered its architecture to be confidential.

9        28.    Apple satisfied its confidentiality and other obligations under its agreements

10   with Kodak.

11   **V.     Kodak's Wrongful Acts**

12       29.    Apple revealed its confidential information to Kodak in confidence, which

13   Kodak unlawfully used to prepare its application for the '218 patent.   The purpose of the patent

14   system is to encourage innovation by conferring on the patent holder a limited right to control who

15   can use its invention.   Part of that control includes the ability to exclude others from using the

16   patented invention, as well as the ability to issue exclusive or nonexclusive licenses to the patented

17   invention, which can be extremely lucrative, as it has been for Kodak based on its litigation efforts

18   related to the '218 patent.

19       30.    Kodak's agreements that any derivatives based on Apple's disclosures

20   remain Apple's property makes Apple the rightful owner of the '218 patent.   Moreover, Kodak's

21   agreement to assign ownership to Apple on derivatives of Apple's disclosures gives Apple

22   equitable rights in the '218 Patent.   Additionally, Kodak's use of Apple's confidential information

23   and its failure to disclose and assign its rights to the '218 patent to Apple constitute breaches of the

24   parties' agreements and has unjustly enriched Kodak.   Kodak has also unlawfully converted

25   Apple's intellectual property into its own property, has breached its duty of confidence with Apple,

26   and has committed acts of unfair competition.

27       31.    As explained above, Kodak has recently enjoyed litigation settlements and

28   royalties for the '218 patent that amount to over $1 billion.   Kodak has further been unjustly

8

**COMPLAINT FOR BREACH OF CONTRACT**

1   enriched at least in these amounts, and Apple has suffered and will continue to suffer actual

2   damages by Kodak's unlawful assertion of ownership rights in the '218 patent.   Indeed, Kodak has

3   gone so far as to assert the '218 patent against Apple, thereby forcing Apple to incur attorneys' fees

4   and other expenses in defending itself.

5   **VI.     Statutes of Limitations**

6          32.     The causes of action alleged below carry either a two, three, or four-year

7   statute of limitations, placing the operative date in August of 2008, 2007, or 2006.

8          33.     California uses the "discovery rule" to determine when a cause of action

9   accrues for purposes determining the statute of limitations.   A claim accrues when the plaintiff

10  discovers, or could have discovered through reasonable diligence, the injury and its cause.

11         34.     Apple did not discover, and could not have discovered through reasonable

12  diligence, Kodak's wrongful acts prior to August of 2008.   Indeed, Kodak's very failure to

13  disclose to Apple its improvements on Apple's technology prevented Apple from having any

14  knowledge of Kodak's wrongful acts; Kodak secretly pursued the '218 patent without informing

15  Apple of its activities.

16         35.     Kodak holds thousands of patents, and Apple could not have discovered

17  through reasonable diligence prior to August 2008 that any one of those patents might implicate

18  Apple's rights arising out of the parties' relationship in the early 1990s.   In California, a plaintiff is

19  under no duty to continuously monitor a defendant's activities to determine if a cause of action

20  exists.   Moreover, the '218 patent did not issue until 2001, some eight years after the parties'

21  relationship had grown stale.

22         36.     Kodak and Apple had additional discussions in the 2007-2008 time frame,

23  but, again, at no time during that period did Kodak assert or otherwise identify the '218 patent.

24  Thus, Apple could not have discovered the wrongful acts committed by Kodak until after October

25  2008, when Kodak first brought the '218 patent to Apple's attention.

26

27

28

9

**COMPLAINT FOR BREACH OF CONTRACT**

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

37.     Apple incorporates by reference paragraphs 1 through 36 as though fully set forth herein.

38.     Apple and Kodak entered into various contracts, including contracts dated February 28, 1991 and December 20, 1994.   Kodak committed significant acts in violation of these various contracts, and Kodak failed to perform other significant acts that the various contracts required Kodak to do.   For example, Kodak breached the 1991 agreement in multiple ways, including:  1) by unlawfully using Apple's confidential information without Apple's consent, 2) by unlawfully claiming ownership of the '218 patent, and 3) by failing to grant Apple a royalty-free license to the '218 patent and/or acknowledging Apple's ownership of the '218 patent.   Kodak likewise breached the 1994 agreement in multiple ways, including:  1) by unlawfully using Apple's confidential information without Apple's consent, 2) by claiming ownership of the '218 patent, 3) by failing to disclose to Apple Kodak's derivative work, and 4) by failing to assign to Apple Kodak's rights to the '218 patent.

39.     At no time was Kodak excused from having to perform all of the significant acts that the contracts required, nor was Kodak permitted to commit acts in violation of the contracts.   Likewise, Apple has satisfied its obligations under its various agreements with Kodak.

40.     Apple has been and continues to be harmed significantly from Kodak's breach of contract.

**SECOND CAUSE OF ACTION**
**(Conversion)**

41.     Apple incorporates by reference paragraphs 1 through 36 as though fully set forth herein.

42.     Apple had ownership rights to the intellectual property it disclosed to Kodak in the early 1990s concerning digital camera technology, and to all improvements thereon.   Kodak received Apple's intellectual property and made improvements to it in filing and prosecuting the applications that led to the '218 patent.   Kodak intentionally took possession of Apple's

10
**COMPLAINT FOR BREACH OF CONTRACT**

1  intellectual property for a significant period of time, and in claiming ownership to the '218 patent,

2  prevented Apple from having access to its intellectual property.

3    43. Apple did not consent to Kodak's use, possession, or ownership of Apple's

4  intellectual property and improvements thereon.

5    44. Apple has been and continues to be harmed significantly from Kodak's

6  unlawful conversion of Apple's property.

7    45. Kodak's conduct was the legal cause of Apple's harm.

8  **THIRD CAUSE OF ACTION**
**(Declaration of Ownership)**

9

10    46. Apple incorporates by reference paragraphs 1 through 36 as though fully set

11  forth herein.

12    47. California Code of Civil Procedure § 1060 provides that "[a]ny person

13  interested under a written instrument, . . . or under a contract, or who desires a declaration of his or

14  her rights or duties . . . in respect to, in, over or upon property, . . . may, in cases of actual

15  controversy relating to the legal rights and duties of the respective parties, bring an original action

16  or cross-complaint in the superior court for a declaration of his or her rights."

17    48. Apple requests that, based on the actions described herein, Apple be

18  declared the rightful owner of the '218 patent.

19  **FOURTH CAUSE OF ACTION**
**(Unfair Competition)**

20

21    49. Apple incorporates by reference paragraphs 1 through 36 as though fully set

22  forth herein.

23    50. Kodak has engaged in unfair competition under the California Business and

24  Professions Code § 17200 and 17500 *et seq.*, which provide that "unfair competition shall mean

25  and include any unlawful, unfair or fraudulent business act or practice."

26

27    51. California Businesses and Professions Code § 17203 further provides that

28  "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be

11
**COMPLAINT FOR BREACH OF CONTRACT**

1   enjoined in any court of competent jurisdiction.   The court may make such orders or judgments . .

2   . as may be necessary to prevent the use or employment by any person of any practice which

3   constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any

4   person in interest any money or property, real or personal, which may have been acquired by means

5   of such unfair competition."

6           52.     The acts described in paragraphs 1 through 36 of this Complaint constitute

7   unlawful, unfair, and/or fraudulent business acts or practices on the part of Kodak.

8                                    **(Unfair Business Acts)**

9           53.     Given the exclusionary power that a patent conveys, Kodak's actions have

10  had a direct, discernible and anticompetitive impact on competition; that said anticompetitive

11  conduct included, *inter alia*, Kodak's unfair demand for the royalties that Kodak has exclusively

12  extracted from competitors in the marketplace for access to the '218 patent; in addition, Kodak has

13  unfairly asserted a right and an ability to exclude others, including Apple, from practicing the

14  disclosed invention.   The above mentioned conduct, which has occurred as a result of Kodak's

15  unfair use of the information disclosed to Kodak by Apple in confidence, has significantly

16  threatened and harmed competition, and has therefore engaged in unfair conduct which constitutes

17  unfair competition under § 17200 et seq. of the Business & Professions Code of the State of

18  California.

19                                  **(Unlawful Business Acts)**

20          54.     Apple invested substantial sums of money in the research and development

21  of digital camera technology.   Apple disclosed that technology to Kodak in confidence and

22  pursuant to non-disclosure agreements, with the hopes of a possible joint development of digital

23  camera projects.   Kodak was prohibited from using Apple's technology or any improvements

24  thereon, and from claiming ownership of Apple's technology or any improvements thereon.

25  Kodak was further required to disclose to Apple any derivative works, and to assign to Apple the

26  rights to any such derivative works.   Rather than abiding its contractual obligations, Kodak instead

27  used Apple's disclosure to prosecute an application for a U.S. patent, and claimed Apple's

28  technology as its own.   By doing so, Kodak has earned over a billion of dollars in litigation

settlements and royalties.   In addition, and by reason of said conduct, Kodak violated one or more of the following statutes and regulations: 35 U.S.C. §§ 115 and 116; and 37 CFR 1.56 and 19 CFR 210.4, and has therefore engaged in unlawful conduct which constitutes unfair competition under §§ 17200 et seq. of the Business & Professions Code of the State of California.

55.     Apple has been and continues to be harmed significantly from Kodak's wrongful acts.

### (Common Law Unfair Competition)

56.     That by reason of the facts and circumstances mentioned above, Kodak has engaged in common law unfair competition; rather than abiding its contractual obligations, Kodak unlawfully used Apple's disclosures to prosecute an application for a U.S. patent and thereby passed off Apple's technology as its own.

### FIFTH CAUSE OF ACTION
### (Breach of Confidence)

57.     Apple incorporates by reference paragraphs 1 through 36 as though fully set forth herein.

58.     The acts described in paragraphs 1 through 36 of this complaint constitute a breach of confidence by Kodak against Apple under the common law of the State of California.

59.     Under the common law of California, a breach of confidence claim arises when (1) an idea, whether or not protectable, is offered to another in confidence, (2) is voluntarily received in confidence with the understanding that it is not to be disclosed, and (3) is not to be used by the receiving party beyond the limits of the confidence without express permission provided.

60.     The information that Apple disclosed to Kodak, as described above, was highly confidential in nature.  Apple took steps to protect the confidentiality of this information, including by entering into non-disclosure agreements with Kodak.  Apple disclosed the information to Kodak in confidence, pursuant to the non-disclosure agreements.  Pursuant to these agreements, Kodak had a duty of confidence not to use the information that Apple disclosed, and to disclose to Apple any works derived from Apple's disclosure.

**COMPLAINT FOR BREACH OF CONTRACT**

1    61. Kodak breached its duty of confidence in using Apple's confidential

2 information to conceive the alleged invention claimed in the '218 patent.  Kodak took Apple's

3 confidential information, improved upon it, and engaged in a lengthy application process before the

4 U.S. Patent & Trademark Office in pursuit of the '218 patent.  In so doing, Kodak unlawfully

5 disclosed Apple's confidential information to the Patent Office and to the public.

6    62. Apple has been and continues to be harmed significantly from Kodak's

7 breach of confidence.

8            **PRAYER FOR RELIEF**

9    WHEREFORE, Apple requests that this Court enter judgment against Kodak and

10 grant Apple the following relief:

11    1. A judicial determination that Apple is the owner in equity and law of the

12 '218 patent under Cal. Civ. Code § 3380 and other applicable laws;

13    2. An order of specific performance requiring Kodak to assign its rights to the

14 '218 patent to Apple.

15    3. Restitution of all amounts which Kodak has received as a result of claiming

16 ownership of the '218 patent;

17    4. An injunction permanently enjoining Kodak's use of the '218 patent and any

18 other property or work that Kodak derived from Apple's disclosures;

19    5. An injunction permanently enjoining Kodak from seeking to enforce the

20 '218 patent or any other wrongfully obtained intellectual property right against Apple in any forum,

21 including the United States International Trade Commission and the United States District Courts.

22    6. An award of punitive damages;

23    7. A trial by jury;

24    8. Attorneys' fees, costs, and expenses, including costs incurred as a result of

25 the ITC investigation instituted against Apple at Kodak's request; and

26

27

28

**COMPLAINT FOR BREACH OF CONTRACT**

9.      For such other and further relief and damages as the Court deems proper.

Dated: August 25, 2010                           WEIL, GOTSHAL & MANGES LLP


                                                 By: _____
                                                        Matthew D. Powers
                                                        Gregory D. Hull
                                                        Attorneys for Plaintiff
                                                        APPLE INC.

15
**COMPLAINT FOR BREACH OF CONTRACT**